We have one case to be argued today. It's a holdover from our sitting, I believe in January or so, and it's number 20-1634 P&A Construction Inc. et al., the International Union of Operating Engineers, Local825 et al. Ms. Lovelace, Ms. Messers-Kilbert, and Reagan. Ms. Lovelace? Can the court hear me at this time? Yeah, I can. Is that Mr. Kilbert or Reagan? This is Mr. Lovelace. I'm trying to get my picture to work again. It's just cut off all of a sudden. It wasn't working before. Well, we hear you well, so that's good news, and I apologize for the name ended in A, and I was assuming the incorrect gender. My fault. Okay. We hear you well, so you can feel free to begin, Mr. Lovelace, whenever you're ready, and as long as we can hear you by audio well, things should go smoothly. Okay. Thank you, Your Honor. The court, this is Oteyambe Lovelace. I'm counsel for P&A Construction and Utility Systems Construction in this matter. As requested by the court, today I'm prepared to start. Do you wish to request time for rebuttal? Five minutes, Your Honor. That's fine, and I take it you're the pinch hitter coming in at the last minute, because I think it was Mr. Tobey initially scheduled to argue this. Is that correct? Yes, Your Honor. He had a surgery not a few months back, and he's been slowly recovering from that hip surgery, so I've stopped in and got admitted. Not a problem. Not a problem at all. So you have five minutes for rebuttal, and go for it. Thank you. Okay. Today, as requested by the court, today I'm prepared to start by dealing with the issue that was asked of us to prepare for today, which was to determine whether or not the appellant's claims for tripartite arbitration has been dismissed or finally adjudicated by the district court, and whether this case is properly viewed as an appeal from a final order or dismissal. The appellants respectfully submit that the opinion issued by the district court was a final decision and a final order that is appealable because the request for the tripartite arbitration award was effectively foreclosed and denied as a result of the opinion and order issued by the district court and essentially resolved all remaining issues left in the case. Now, wasn't there just also a stipulation to that effect that no further claims remain to be litigated? Yes, your honor. So I was about to mention that. So while at the time the order was issued, there were still some claims remaining. The parties followed what we think is the procedure required by the third circuit, and we signed a joint stipulation, a consent order, that stated therein that all the remaining claims were either dismissed or had been resolved by the and that the only remaining claims were, was that pursuant to the Harmony Agreement and the tripartite arbitration, which were denied by the district court. This stipulation was signed. There was an alternative stipulation that had been proposed by Local 825, and the language of that proposed stipulation actually would have dismissed all of the claims and dismissed the complaint. The stipulation that you additionally put in, or your predecessor, and the version that was finally entered, that doesn't have that language. Instead, it indicates that there's an agreement to dismiss all of the other claims, but as to the claim for tripartite arbitration, that relief had been denied, but that one is not, by the terms of the stipulation, dismissed. What's the significance of the rejection of Local 825's language, which would have dismissed that claim, versus the stipulation that was entered? I can't speak to exactly why, counsel, and why during the negotiations of the process. I think that the overall goal of the stipulation was that it would be a clear acknowledgement from the court that there were no more issues remaining before the court to be decided. I think that was required by the case law. For example, an aluminum company versus Baeser, that's a Third Circuit case, 124F.3D551, Third Circuit. It had a similar situation here. In that court, the district court looked at the effects, and whether or not the order is final depends on the effect of the decision. Here, the effect of the decision was that the ultimate relief that was being requested in the matter, which was a request for tripartite arbitration or harmony agreement arbitration, was denied, leaving there nothing else to be resolved. Specifically, in the aluminum case, it pointed out that ordinarily a final decision will have two effects. First, the decision will fully resolve all claims presented to the district court, and then second, after the decision has been issued, there will be nothing further for the district court to do. We feel that that's... I'm sorry to interrupt, but to be clear, in this situation, an alternative, since the basis for district court's conclusion was that there was not a sufficient factual basis to view utility and P&A as a single employer, was to go forward and engage in discovery or make a further showing to the district court and then renew the motion once there had been some record development in district court. I take it what you're telling us is that that is not something that P&A and utility were or are seeking. We would be inclined to a situation where this matter is kicked back so that we could further develop the record, but at the time... I'm sorry to interrupt, but to pick up on Judge Krause's point, if you think of the original motion to compel arbitration as in the civil procedure space, let's just say it's analogous to a Rule 12b-6 motion. Now, there's a lot of reasons it's not. It attached a certification, it did all these other things, but let's just think of it as being something like that. If a court denies a motion to dismiss on Rule 12b-6, that's not the end of a case. There's still summary judgment, there might be trial, there might be other things, and what I inferred Judge Krause to be asking is, well, just because you lost that motion that one time with the evidence that you had, doesn't mean that... I mean, the district court, why not just come back? Why not say, yeah, all we had was a Barrow certification, it wasn't a declaration, it wasn't an affidavit, it's pretty weak in terms of evidentiary material. Why not just say, yeah, we'd like to do some more finality hinges on whether your initial motion was kind of one bite at the apple among many that you would have, or if it was your only bite at the apple. And your answer, and the reason I kind of, I apologize, but I interrupted you, was because if you want to be in front of us, you kind of have to say, it was our only bite at the apple. But what you just said when you respond to Judge Krause was, we want more bites at the apple. And so it seems to me that if you want to be here, you have to say that was it, we were one and done. And you can't now say, we want more. Your Honor, if I may. So at the time, we were hoping that we would have kind of multiple bites at the apple. That's why we didn't kind of go, the order shall cause. But what we realized through the case law was that we had to be aggressive about this and appeal it immediately because there was a split in the circuit courts as to whether or not we'd be able to even apply for this request for tripartite arbitration later if conflicting awards had come out against us. As kind of developed in the briefing here, there is a split in the circuit courts, whereas the Ninth Circuit requires you to move for tripartite arbitration and seek it out before the conflicting awards come out. And so we wanted to make sure we did everything we could appeal this because we could have been foreclosed when these conflicting awards came out. But the second, the sixth, the 10th, and the DC circuits went the other way. And one could argue that that's a bit of a wrinkle here. They all, five of them dealt with it on the merits. And one just said, before you get to the merits, you have to, as you know, with respect to the Ninth Circuit, it's a bit different than the other four. But does that really take away, at this point, are you saying your stipulation does or does not take everything else off the table? The stipulation does take everything off the table, according, as far as we see, that the matter was closed and the judge seemed to also agree that there were no issues remaining before her at that time. So just to kind of complete that thought then, if there's nothing else for the district court to do, really all we're asked to do here, if it's truly final and we can't send it back for more discovery or do anything else like that, we're basically asked to determine on the factual record, which includes a certification, not a declaration, not an affidavit, not authenticated documents, nothing like that. We're just asked to look at that record and find out if the district court got it right. And we aren't here to say maybe you could do more, maybe you couldn't. If it's final, that's the only question that we have, right? You would be right, Your Honor. Yes. Okay. All right. On the merits, what is your primary argument there? Okay. Because you've got one contract with 15024. The other entity has a contract with 825. Utility subcontracts to P&A and purportedly did not follow 825's hiring procedures. Instead, it hired some of the 15024 workers. So what do we do? So, Your Honor, here we feel that we, the lower court made a mistake here by applying the Emory factors and then holding us responsible to standards that I don't think had been completely recognized by the Third Circuit at this point. For example, we believe that the conclusion or somehow inevitable that there would be conflicting awards, whereas it seems to be, according to American Glass Cutters, Window Glass Cutters League, that all that needs to be shown is that there is a risk of inconsistent obligations being imposed upon the employer. Well, again, I apologize because I know you're in the middle of a thought, but let me just push back on what you just said because I don't think it's just a risk. I think there's modifiers to that risk, like substantial or other courts use different modifiers. But Emory, I think, says substantial. And then if we look at the evidence that comes forth, we've got the certification of Barrows. And in paragraph 12 of that certification, it says, as a result, plaintiffs are now engaged in two arbitrations concerning the same facts and circumstances with two separate arbitrators that could potentially issue inconsistent decisions. Now, I mean, when someone says to me that something could potentially happen, my brain doesn't instantly go to the place of saying, oh, there's a substantial risk of that possibility there. So even if the district court might have used a different formulation of Emory or something like that, I don't think there's any standard that I've ever seen that says could potentially is the new legally operative test. I understand, Your Honor. Yes, the certification does use that language, could. I think that what is also important here is that we did demonstrate as well, though, that there was, in this matter, a 35-year collective bargaining history that would need to be examined by the arbitrators in place, whether it was the arbitrator for Local 825 or the arbitrator for 15024. But only one CBA is in the record. It's hard to establish a dual-tier analysis of arbitration history when only one CBA is in the record. That's an ask, don't you think? Yes, Your Honor, that is a bit much. But there are representations made to the court at that point by staff and ownership at the company saying that they were bound by these CBAs, and there was proof that there was arbitration started concerning the CBA. Why should we conclude that there's any likelihood, much less substantial likelihood, of conflicting awards when the 825 award that's now been confirmed by the district court provided only retrospective relief? And in that situation, that's just a matter of paying for alleged retroactive violations. Yes, Your Honor. The issue with the award that has already now been set out, and which is what our concern was the whole time, was that the arbitrator would disregard the 35-year collective bargaining history and agreement that was in place between the parties. One thing that was important that went on between these parties here is Local 825 audited the companies for every three years, for 35 years, and had no problem with this arrangement. New management came into place. It all of a sudden became a problem. And now, and one thing we did submit to the district court to show how all of this was interrelated was the audit request sent by the union's funds demanding $3 million and classifying utility contractors and P&A as a related company. I understand that argument from your briefs, but let me just take you back to the extent that the only relief that is ordered in the 825 arbitral order is retrospective. How does that create a substantial likelihood of a future conflict with another arbitration award? Okay, because what happens in these arbitrations is well, what we are expecting now is for the steel workers, just as Local 825 has done, is to look back six years and send us an audit demanding money for all of the work performed by the two companies now that they'll be considered, you know, joint employers, or they'll be considered to have violated or violated this work-share agreement, or now the arbitrators now decided that there is no work-share agreement. That is one of the issues now that the unions and the funds can go back six years and use this decision that has now been put out to say that, look, all the work that has been done for the arbitration was in violation of the CBAs, and we want contributions for the past six years. That is what will likely come, and that is actually an arbitration that's still pending with the funds, where they're looking back six years, and they're claiming that all of the work done by P&A, which is a signatory with the steel workers, should be paid to them. They have actually done this now. They're saying that we owe them $3 million. The steel workers, although they're saying that they're staying out of this at the moment, they still have six years to come and say, look, you owe us six years of pay for everything done by utility, that contractor that was signed with Local 825, because arbitrators have found that there is no work-share agreement. If that comes to pass, why shouldn't we just follow the path that they did in Emory in saying, right, you know, it's just a potential conflict. That's not sufficient, but at some future point where there is a real conflict, then you could come back. We agree that the reasoning in Emory is well thought out, and that is a procedure that is fine to be followed, and we think that were this court to decide that the Emory factors apply and that they should be followed step by step and lined out, then we also would agree with that. We just felt that the Third Circuit hadn't completely adopted that standard or set it forth explicitly. You know, you're going in a direction I want to ask you a follow-up question on, which is kind of the absence of a lot of Third Circuit law in this space. You reference that your clients were in a hard spot because there was a circuit split on some of these issues. I'm sure you had to counsel them on which circuit to follow and which circuit not to follow. That's always hard, but one of the things I don't think the Third Circuit's even said is that tripartite arbitration is okay. We've never even endorsed that. The most that we've done is maybe say dicta, and we've enforced tripartite arbitration when a CBA or two sets of CBAs already contemplated it. I don't think we've ever actually crossed that first river, which is saying that tripartite arbitration is acceptable in the absence of provisions in both relevant CBAs that say it is. A lot of the other circuits say that's okay, but that's a really, really bold result that's kind of unique to the labor law space. If someone has contracts, if a business has contracts with two other entities, not for labor, but for parts, and they make a bad contract where they overpromise, they might be subject to dueling judgments, retroactive, maybe even specific performance, but we don't make both those parties go to arbitration with them. We don't compel a non-party to the contract to go to arbitration, so just taking a step back and saying maybe we are riding on a clean slate, why should we even begin to go down the road that the other circuits have gone down in recognizing what is really an extreme form of relief, compelling a non-party to an arbitration agreement to submit to arbitration? I think the reason that this should be done here in this case is that for the best interests of the men involved, the men and women involved, the companies involved in finality on the jobs, what happens here when we have these jurisdictional disputes in labor cases is that one union will be assigned the project, and another union will come in and say they claim that work, and it will effectively shut down. It can shut down the project. It could cause individuals to be laid off for a substantial amount of time and delay large public work projects, private projects. We think that this process of getting all the parties together in one room and resolving it all at one time, if the unions claim the work, let them all air it out in front of one arbitrator at one time, and then we put it all to bed, and that allows the projects. I'm going to jump in here. You reserved five minutes for rebuttal. We've already gone 20 minutes rather than 10, so why don't we hear from Mr. Kilbert and Regan, and then we'll get you back on rebuttal. Thank you, Your Honor. Thank you. Mr. Kilbert. Good morning, Honorable Judges. This is Richard Regan for Local 825. With the permission of the Court, Mr. Gilbert and I had discussed, I was going to go first, if that's okay with the Court. That's fine. That's fine. No problem. Thank you, Judge. Judges, with respect to the threshold issue of finality, I think the whole idea of the stipulation from Local 825's point of view was to make sure, in fact, that we were getting some finality, and basically, utility and P&A weren't half in, half out, basically keeping all of their options open. I think the intent of the finality is really clear. I believe Judge Phipps, you alluded to it, is in the motion for the supplemental record, you have the decision of the arbitrator, and as you pointed out, it's only retrospective. But beyond that now, to bring you up to date, the utility, not P&A, moved to vacate the bilateral arbitration award. We moved to have it confirmed, and the District Court, Judge Wiginton, in fact, confirmed it. I think their participation, and them taking the initiative to vacate it, kind of reflects that they saw that they weren't going to avail themselves of the options that I think you alluded to. You got to clarify something for me. You signed a stipulation on April 1st of 2020 saying that everything's off the table. Then your reply brief, you argue that we do not have appellate jurisdiction to review the District Court's denial. Isn't the motion to stay arbitration moot because these proceedings have already ended? Well, I think it is moot, but I don't think that was our position in the reply. I think that might have been the Steelworkers' position in the reply. I'm looking at local 25. Okay, I don't quite remember saying the lack of jurisdiction because, obviously, we didn't cross-appeal on any issues. Maybe you limited it solely to the Harmony Agreement. Is that it? Yes, the Harmony Agreement. We didn't think there was any basis for the Harmony. Okay, okay. I wasn't going to take time to address the Harmony Agreement unless there were specific... No, I have no questions on that. Yeah, so I think with respect, our intent was to make sure that they weren't trying to have it both ways, so to speak. I think it's clear that they made a tactical strategic decision to just go with what they had with respect to on the union's issue on the bilateral arbitration. As a judge indicated, there were many things that they could have done. They could have tried to amend their complaint. They could have tried to embark upon discovery. They could have tried to bolster the thinnest of thins, what they contended on the joint employer and the single employer. When you get to the merits, if we decide, were we to decide that the employers are a single or joint employer, P&A and utility, how does that affect our Emory analysis? I don't think it... The impact on the Emory... One is, I don't think those concepts were intended to basically be a shield for employers to evade their contractual responsibility with their respective CBAs. Here, you have two distinct CBAs, two distinct companies. Utility has a CBA through it's basically assignment of all its negotiation rights to an association, the construction contractors, labor employers of New Jersey. They essentially have decided to sign away their rights. P&A has a separate CBA contract with the steel workers, 15024. Are you arguing on the record that there's not a single employer or alter egos here, or are you arguing against tripartite arbitration as a whole? Two things. One is, I'm saying they didn't submit any evidence that the district court could have concluded, even remotely, that they were joint employers or single employers under any of the guidance that's out there, whether you go back to Judge Gorth's opinion in the NLRB, Browning-Ferris. In there, you got to understand, once again, the joint employer doctrine was being invoked to basically solidify the liability of the two companies. It wasn't being put forward as a device to exempt them or exempt one company from its contractual obligations. Let me just ask this question. At one level, I get that for tripartite arbitration, there would be need to establish a common employer, either through the joint employer doctrine or the single employer doctrine. What you're saying at one level is, look, they haven't done that. The evidence is insufficient of that. As I read our circuit's law, we haven't really endorsed compelling tripartite arbitration. That's an open question. We've enforced tripartite arbitration agreements, but we haven't compelled it. There's an ask here by P&A that we advance our federal common law in the labor space to allow tripartite arbitration. The rationale given is to bring everyone to the table who's going to affect the situation. But that rationale applies regardless of whether P&A and utility are joint employers or single employers, because what they're saying is it's a set number of jobs one way or the other. At one level, if the common law is in play to advance and the rationale or the policy for a joint employer to be quadrilateral arbitration, as long as everyone's at the table and we prevent labor unrest and we have peace for the workers, why don't we just go that far with the common law? Well, that's going pretty far. You stole one of my lines. I was going to say, we don't have here a request for tripartite arbitration. When you look at it and analyze it, it's really a request for quattro arbitration. And look, I don't think that this case really takes us beyond windows, glass cutters. I think in that case where I believe who authored, I know Judge Gibbons was on it, is it kind of alluded that upon a proper record, maybe you get to the point where you decide the tripartite arbitration, whether this circuit or in the direction of the second, the sixth, the 10th, the DC circuit, or does it want to go on the outliner way of the ninth? The other thing that I think, basically, members of this panel have long recognized that arbitration is a matter of contract. And you said that in farmland. And here you have contracts. The contracts are the CBAs between one employer, one union, a totally separate employer, and a separate union. But that doesn't question tripartite arbitration, as other circuits have recognized it, is a triangle involving a single employer. Correct. And so if we assume that the evidence here were sufficient to show that we had a single employer, I take it you don't oppose the idea of this circuit embracing tripartite arbitration and the Emory factors in principle. It's that it's simply inapplicable on these facts. That's your argument, right? If I could, two things. One is, I think, as you said, on a proper record, given the trend is, you know, there might be a case that comes before this court, where it should decide the issue of tripartite and then decide how it wants to shape it. And if it were to do that, or were to use this case for that occasion, I think it should shape it more along the lines of the Sixth Circuit in Kroger, with a combination of Emory Freight. But I think it really should be, there should be conflicting awards, it shouldn't be a premature, it certainly shouldn't be a risk, a hypothetical risk of conflict. I could see that you could have a condition in there, where it's a traditional single employer with two unions has signed two different CBAs with where the employer is then assigning work assignments, for example, as you're like, okay, you know, who, who's going to use the, you know, the freight loader to move boxes from one union or the other, you know, where once you have one bilateral award, it's got to be pretty apparent that it's going to pose a conflict with that employer's CBA with the other one. So you could, you know, perhaps tag on to it, something where you don't necessarily need two, you know, completed bilateral awards. But I certainly don't agree with the Ninth Circuit idea that you do this before there's even a single bilateral award. And I think there should be conflict, conflicting ones. And basically, you know, the other circuits, the other circuits, I think, do require it's after you have conflicting awards issued. I agree. Isn't really your best theme that this is a matter of discretion for the district court? It is. It's not an abuse of discretion. It certainly is not, you know, the bottom line, in terms of at the end of the day, when I, you know, when I close in summary, it's going to be, you know, regardless of what test you were to apply, Second, Sixth, DC Circuit, Tenth, even the Ninth, on this record, the district court did not abuse this discussion in two ways and denying, you know, the request for judicially compelled tripartite arbitration, and rejecting the notion that these two employers had demonstrated to the court that they are joint or single employers. Is there anything else you wish to add before? I've got an argument right after this. Only if you have a specific question for me, judges. No, I do not. If not, we'll hear from Mr. Chilbert. But my colleagues ask you if you have any further questions. Can I just ask briefly, the district court has now confirmed the 25th award. Is there an intent to appeal there? And is there any reason that we should hold this case for that appeal? Would they affect each other in any way? Well, there's no intent on the union's part to appeal, I can tell you that, Judge. Your Honor, if your question is directed to the appellants, we do, they do want to appeal that. Yes. All right, we'll come back to you. Do you see, Mr. Regan, any potential conflict there that suggests we ought to hold this case if there is to be an appeal? No, I don't. I think there's an established procedure, you know, under, you know, what Title IX arbitration. And I think the grounds for appeal are very, very narrow there. And I think that if utility elects to go down that road, it should go down that road with its eyes open with respect to its frivolous appeal or not. All right. Why don't we hear from Mr. Chilbert, and then we'll go from there. Thank you very much. Thank you, Judges. Good morning, Your Honor. I'd like to first address the issue of jurisdiction as requested by the Court. The appellants here filed their appeal on March 16th, immediately after the District Court issued the award denying their motion for tripartite arbitration. At that point in time, the relief against the operating engineers relating to restraining them from filing further grievances or exercising economic pressure against P&A to reassign. So, is that why you had the April 1 stipulation? So, I think that that's right. The April stipulation should have the effect of ending the proceedings in the District Court and converting this appeal into appellants one bite in the apple. And if that's the case... Yeah, but I'm looking at the District Court's order on April 2. It says the ultimate relief has been denied. There are no remaining claims. I mean, is there anything else left to do? At the District Court level at the present time, no. At the time that the notice of appeal was I got it. So, it was filed on the 16th, but you cleared it up two weeks later. I think that's correct, Your Honor. Let's say we're dealing here with a final order. I mean, normally, if we were to embrace a new standard and announce new law, we would remand for the District Court to have the opportunity to apply that and for record development as needed. If in this case, we are to conclude precedentially that tripartite arbitration is viable under Section 301 and that the Emory factors apply, why shouldn't we then remand as appellants have requested for the District Court to apply those factors and allow for record development? So, Your Honor, the District Court did apply the factors from Emory and appellants had every opportunity to argue for those factors. They cited to Emory, they cited to other circuit courts relating to the concept of tripartite arbitration, and they frankly made no effort whatever to develop a factual record sufficient to carry the day on any of those. Let me just interject here, which is, you know, there's a lot of different type remands, right? They come in a lot of different shapes and sizes. One sort of remand is for additional fact-finding, right? And another is because there's a new standard of law. We don't need any new fact-finding. We just would like a District Court to take the first crack at taking the pre-existing record and applying the new standard to that pre-existing record. And so to the extent that Judge Krause's question can be kind of fractioned into different pieces, why at a minimum isn't if we announce a new standard, it appropriate to remand to the District Court to, without any new fact-finding, just apply that standard to the pre-existing record? Or is that something that we should do because it's just a pure question of law? Your Honor, I do think that it is a pure question of law at that point. So you wouldn't, on appeal, give any deference to the District Court's first crack at it. But if this Court, for a good and sufficient reason, determines to remand this, we would submit that the appropriate remand would be to apply whatever standard this Court articulates, should it choose to articulate one, to the facts as they were developed below. Any further questions of my colleagues? All right. If not, then thank you. And we will get Mr. Lovelace back on rebuttal. Thank you, Your Honor. Thank you. Mr. Lovelace? Thank you, Your Honor. One thing I'd just like to point out is I do think that, kind of in line with what Your Honor, Judge Phipps was saying, that there are different types of remands. In this case, it does seem like it would be appropriate to remand the case back if this Court does decide that the Emory factors should all be addressed and that Emory is the controlling law, should be referred back to the District Court to reconsider this decision. However, I also would add— Well, the District Court discussed three of the five Emory factors. Yes. And didn't discuss two of them. But I was just going to add that I think that if that is going to be the standard that is going to be accepted and recognized by Third Circuit, and that is now being said— Well, I mean, is there anybody that hasn't adopted the Second Circuit's Emory factors? Only thing I'm saying is I just believe that if that is the standard that gets adopted now, it being, you know, April of 2021, that the appellant should be given an opportunity to brief this issue, knowing full well that the Third Circuit requires that standard and requires that those factors be addressed— But the District Court felt it only needed to discredit— The District Court did adopt those factors and believed that it needed only to deal with three of them in order to rule, you know, in favor of the other parties. So is your point that— My concern is here, as we pointed out before, that with the wrinkle that one of the judges pointed out, with the wrinkle of the Ninth Circuit, you know, there's this issue that, yeah, we didn't have a complete record, and maybe we could have stayed in language— Well, what if the Ninth Circuit adopted the reasoning of the Ninth Circuit, we could have been foreclosed here. So I think that that is kind of the wrinkle in the issue— But if we don't adopt the Ninth Circuit, then what happens? In other words, the Ninth Circuit basically has held that, you know, you must seek tripartite arbitration before it's subject to conflicting awards, but it appears that the other circuits say that you can seek it after conflicting awards are issued. Isn't that right? That is correct, yes. And so what if we just go with the four, that the Second, the Sixth, the Tenth, and the D.C. Circuit? Well, I think that would be fine if the court decided to do that. My only concern is of equity and fairness to the litigants. The court would be adopting a standard requiring evidence— What is inequitable here as to how the district court operated in choosing to look at the Emory factors, find that three were relevant enough for the court to make a decision, and go from there? What was inequitable? Well, the court also pointed out in its decision that we had failed to go through and present evidence about every single Emory factor. Had we known that that was going to be a requirement of the court, as the court pointed out in its decision, we would have done that. But it was not the standard that was acquired by the Third Circuit at that time. Counsel, didn't you assume as much? I mean, you argued the Emory factors in your own briefing. We will fully admit that we assumed that we were unclear. We weren't sure about what Circuit Court would prevail in this. But yes, we did address the case law that we found online, and we did touch upon that. Yes, Your Honor. But I guess usually if someone is uncertain about what it's going to be, and I get your point. Your client's in a tough box because there might be a little tension between different circuits, and that just makes your job and your client's job a lot harder. But usually when someone's uncertain, they tend to put in enough proof that would meet whatever the test always the best legal strategic response to uncertainty in the law. It's usually kind of all denominators are met, not least common denominator. And so to the extent that there was uncertainty that made your and your client's job harder, why did you go with the least common denominator approach as opposed to kind of the cover all the bases approach? I understand what you're saying, but I think it would be unreasonable to expect attorneys and clients to cover all the possible avenues or ways that it could shake out. The district court actually required us to address the Emory factors. But what I'm saying here is that the court could have chose some other case. It could have chose some other circuit case or decision and went off of that and then could have said that you were required to address X, Y, Z standards. How would we have known? Yeah, the point is, it sounds like you're making a due process argument. The district court wanted to have addressed, I suppose, the Emory factors. You did address them. The court did address three of the five thinking that was enough to be necessary. Where is the possible due process violation here? Okay, let me I think I'll point out. Let's see if I can find the decision. One second. Counsel, could I ask you in the interest of time? I'm sorry, Your Honor. Sorry, I just in the interest of time in the interim, whether you agree that a contractual nexus is a prerequisite for tripartite arbitration under section 301? Hasn't every circuit that has adopted tripartite arbitration done so in the context and many have been explicit about the requirement of contractual nexus? Yes, I think in this situation, we feel that the contractual nexus is required because that's what's getting everybody into arbitration. But we feel that that is also established here because these companies and even as Local 825 is shown in their audits, they're holding these companies. Both companies are being held liable for damages under Local 825's agreement and both companies will be held liable for damages under Local 15024's CBA when not arbitration. So for you to be entitled to tripartite arbitration given our agreement that a contractual nexus is required, it rises or falls with your proof of utility and P&A being a single or joint employer? If that is the requirement, yes. Can I just ask one? This is probably at least my final question, but can an employer be both a single and a joint employer or is that really an either or formulation? Either a single employer or your joint employers? But I mean, I'm at least struggling conceptually with how you could be a single employer. We're all just one, but then we're also joint as well. Maybe that's an obvious question to the assembly of labor line knowledge that we have here, but at least to me, those struck me as being intention. What do you think? Yeah, they can't be different. The issue here is that what we're saying is that in these labor arbitrations, the case law is kind of going to and a joint employer because of how they operated their business. It was just one company. And as the facts kind of show, it was just P&A. Then they opened up utility just to appease and kind of make this agreement and work out a resolution. But I guess my point is, isn't joint employer like the fallback? Like, isn't your real argument that they're a single employer? Yes. And then if they aren't a single employer, well, then because of how they operate their company, they should be a single employer. But what I'm asking is, is a theoretical matter. You weren't saying they're just one company who's actually two. You're saying that they're first treat us as one company. If we don't meet that test for some reason, then we want you to import another test from NLRA to LMRA that's joint and we meet that test. But I think they're best viewed as substitutes, not compliments. Is that right? Yes, that would be correct. Okay. Yes. So last week, where did you answering Judge Ambrose's question and you were looking to the text of the opinion for where there could be a due process violation? Yes. I was just pointing to footnote six on page A5 of the appendix. The court, Judge Wiggington points out that plaintiffs have made no showing with respect to the remaining Emory factors. And she puts that in there. If that's how the judge felt, and that is the standard and that's what we're required to show, I think we should be given an opportunity to- But both employers cited Emory in their briefing to the district court to support their motion to compel arbitration. And local 825 expressly addressed Emory. And so the court addressed three factors and is saying that in effect, you did not address the remaining factors. Therefore, the court will either, if, and I suppose the argument there that might be, you would claim an abuse of discretion, but it's hardly a due process violation. I'm just using it as an example for why in this court's wisdom, it may want to remand and allow the appellants to fully brief that issue because it is something that, and I do believe this was an abuse of her discretion to even adopt and require us to apply the Emory factors and then brief it all out. But in terms of responding to your due process, I do believe that she's requiring it and we were not given notice that we had to address all of the Emory factors. Let's assume that you're bound to the record that you have, having chosen to appeal at the time you did. Some of those Emory factors include that the collective bargaining agreements have to be compatible in terms of their procedures. And how could we make that assessment or say the district court was in error when the agreement between PBA and local 15024 isn't even in that record? Understood. I think that this would require the court to remand it with further briefing to actually address all the Emory factors. I think that things like that, like the CBA with the steel workers could easily be attached and incorporated. And I think it's something that addressed and the district court can make a decision applying Emory to this case. Well, can you give us an offer of proof? Say we did remand, what are the additional facts that you put in the record to show that the Emory factors were satisfied? Okay. All right. Okay. So if the record was to be reopened, we think we would include additional certificate. Well, first, let me pull up the Emory factors. Okay. So at this moment, if we do apply, I think one, we would be able to show one, that there is actually a arbitration award that's been issued. You can see on the final page of her decision, she points out that there are no conflicting awards, nor is there an arbitration award at the moment. Something that's changed now is that there is at least one arbitration award that seems to conflict with the requirements that utility P&A have in compliance with their CBA, with the steel workers. Let's see. Can I just ask this? If the record is reopened, would you put Ms. Barrows up for testimony and cross-examination? Yes. We would also subpoena maybe records from the steel workers concerning this history of the history between the parties, the agreements between the parties. We would also include certifications from workers that were part of this whole arrangement, that were part of this agreement for 35 years, that understands how the parties went across this relationship. One thing that's clear in labor cases and CBAs is that CBAs are not defined strictly by the text that's therein. The collective bargaining history is also included in the CBA, and that's something that's acknowledged by the court. We would go further to brief that to acknowledge that the collective bargaining history that can be established through further testimony and certifications and affidavits could then demonstrate that the work-share agreement existed. The fact that the work-share agreement existed, how does that show that it was a single or joint employer relationship? Understood. We would also be able to show the relationship between the two companies, show common management, show common locations, show common offices, show common administrative procedures, show that they always worked on the same projects together for 35 years. We would also be able to show they had the same ownership and the same management team. All of this is information that we could further develop in the record if it's sent back. It's something that Ms. DiDiBaro alluded to in her certification, but we could further develop that if it is sent back. These are facts that aren't really in dispute, and it's facts that 825 is relying on too. Their audit against is seeking $3 million and holding the companies as being the same. We definitely think we could further develop that. Thank you. I know we said we'd give you five minutes. We gave you about 14. I appreciate that. Thank you, Your Honor. It's an important enough case for the parties that it deserves the time. Thank you to all three counsel for being with us today. We'll take the matter under advisement.